UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND DEAN MYERS,<br><br>                        Plaintiff,<br><br>  vs.<br><br>DAVID CLAYTON, et al.,<br><br>                       Defendants. | Case No.: 22-cv-0673-RBM-BLM<br><br>**ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)** |

    Plaintiff Raymond Dean Myers, a state prisoner proceeding pro se, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1), accompanied by a Motion for leave to proceed in forma pauperis ("IFP") (the "IFP Motion"). (Doc. 2.)

**I.    MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS**

    All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1]  *See* 28 U.S.C. § 1914(a).  The action may proceed despite a failure to prepay the

---

[1] In addition to a $350 fee, civil litigants, other than those granted leave to proceed IFP, must pay an additional administrative fee of $52.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)).

1

entire filing fee only if leave to proceed IFP is granted pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1) & (4). The institution collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which the account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2). Plaintiff remains obligated to pay the entire fee in monthly installments regardless of whether their action is ultimately dismissed. *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

In support of his IFP Motion, Plaintiff has submitted a copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Statement Report and Prison Certificate, which indicates that during the six months prior to filing suit Plaintiff had an average monthly balance of $26.07, average monthly deposits of $5.38, and had an available balance of $4.84 in his account at the time he filed suit. (Doc. 3 at 1.)

Plaintiff's IFP Motion is **GRANTED**. Because the initial partial filing fee exceeds the amount in Plaintiff's account, the Court imposes no initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered"). Plaintiff remains obligated

to pay the entire $350.00 filing fee in monthly installments even if this action is ultimately dismissed. *Bruce*, 577 U.S. at 84; 28 U.S.C. § 1915(b)(1), (2).

## II. SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that Section 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a

source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012) (quoting *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011)).

### B. Plaintiff's Allegations

Plaintiff alleges he is a disabled inmate incarcerated at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California. (Doc. 1 at 4.) He possessed a "DME vest and four wheeled walker with seat and breaks" necessary to accommodate his disabilities, which include arterial blockage and spinal cord paralysis arising from bone marrow transplant during cancer treatment. (*Id*.) When Defendant David Clayton ("Dr. Clayton") took over as the new RJD Primary Care Physician he ordered those items confiscated on September 24, 2019 and October 30, 2019, pending review of Plaintiff's medical records. (*Id*.) On December 18, 2019, Plaintiff met with Dr. Clayton, who told him the vest would be returned and he would receive a new walker because RJD no longer purchased the old type of walkers. (*Id*.) Plaintiff informed Dr. Clayton that the new walkers are junk because they have only two wheels and no seat. (*Id*.) Without anger or animosity in his voice, Plaintiff told Dr. Clayton that because he had taken other such items from inmates with disabilities, "you should watch your back in the yard, cuz, the inmates want to hurt you, and you're [sic] bedside mannerisms suck and you have no compassion." (*Id*. at 5.) Immediately after that meeting Dr. Clayton reported to Defendant RJD Sergeant E. Brillo ("Brillo") that Plaintiff had threatened Dr. Clayton with great bodily injury. (*Id*. at 4, 11.) Brillo took a statement from Plaintiff about the incident which Plaintiff alleges contained falsehoods. (*Id*. at 9.)

About one and one-half hours after Dr. Clayton notified staff of Plaintiff's statement, he was taken from his cell and placed in Administrative Segregation ("Ad-Seg") where he

1  remained for 37 days. (*Id*. at 5.) A Rules Violation Report ("RVR") was issued charging
2  him with threatening staff. (*Id*. at 5-6.) Defendant RJD Lieutenant Williams ("Williams")
3  did not allow Plaintiff to call witnesses or conduct an investigation at the first hearing on
4  the RVR but allowed him to do so at a second hearing. (*Id*.) At the second hearing
5  Williams found Plaintiff not guilty and dismissed the charge. (*Id*. at 6.)

6       Plaintiff states he was forced to strip naked in Ad-Seg and was allowed to wear only
7  boxer shorts and a tee shirt while waiting to be evaluated by a nurse. (*Id*.) He contends
8  Ad-Seg was infested with pigeons and the pigeon feces on the floor caused him to become
9  ill while held there incommunicado. (*Id*.) Defendants RJD Assistant Warden Buckel, RJD
10 Captain Rodriguez, and RJD Correctional Counselor Florez sat on a committee convened
11 eight days after Plaintiff was placed in Ad-Seg. (*Id*. at 12.) They did not allow Plaintiff to
12 speak, other than to plead guilty or not guilty, which caused him to serve an additional 29
13 days in Ad-Seg. (*Id*.)

14      Plaintiff claims he spent 37 days in Ad-Seg based on false allegations for which he
15 was exonerated and for which none of the Defendants were ever called to account, in
16 violation of his Fifth, Sixth and Fourteenth Amendment rights to due process, to be free
17 from cruel and unusual punishment, double jeopardy and an impartial jury. (*Id*. at 4-14.)
18 He requests monetary damages as well as an injunction preventing Defendants from
19 retaliating against him and providing him single-cell status. (*Id*. at 16.)

20     **C.**    **Analysis**

21      The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of
22 life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The
23 requirements of procedural due process apply only to the deprivation of interests
24 encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of*
25 *Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a
26 plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a
27 deprivation of the interest by the government; (and) (3) lack of process.'" *Wright v.*
28 *Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995

F.2d 898, 904 (9th Cir. 1993)).

"[A] prisoner is entitled to certain due process protections when he is charged with a disciplinary violation." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974)). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id*. at 1077-78. However, those protections adhere only when the disciplinary action implicates a protected liberty interest either by exceeding the sentence in "an unexpected manner" or where an inmate is subject to restrictions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Where a protected liberty interest is not at stake, the minimum requirements of due process require only that "the findings of the prison disciplinary board (be) supported by some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985).

The minimum requirements of due process were satisfied because Dr. Clayton's report of Plaintiff's statement to him as a threat constituted "some evidence" in the record despite Plaintiff's contention it was not intended as a threat. *See Hill*, 472 U.S. at 457 (finding the "some evidence" standard of *Hill* is met with "meager" evidence of guilt as long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."); *Bruce v. Ylst*, 351 F.3d 1283, 1287-88 (9th Cir. 2003) (holding that a single piece of evidence with sufficient indicia of reliability satisfies *Hill*'s standard); *Hill*, 472 U.S. at 455 ("Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.") Plaintiff's allegation that he was falsely charged with a rule violation, by itself, also fails to state a due process claim because "a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports." *Buckley v. Gomez*, 36 F.Supp.2d 1216, 1222 (S.D. Cal. 1997), *aff'd*, 168 F.3d 498 (9th Cir. 1999). This is because the procedural protections available in

disciplinary proceedings adequately protect a prisoner's federal constitutional right to due process. *See*, *e.g.*, *Gadsden v. Gehris*, No. 20-cv-0470-WQH-DEB, 2020 WL 5748094, at *8 (S.D. Cal. Sep. 25, 2020) ("The allegations of the filing of false disciplinary charges by itself does not state a claim under 42 U.S.C. § 1983 because federal due process protections are contained in the ensuing disciplinary proceedings themselves.").

Accordingly, in order to state a due process claim Plaintiff must allege he was deprived of a protected liberty interest giving rise to the *Wolff* procedural protections and that he was deprived of those protections. Plaintiff has not alleged he was deprived of a protected liberty interest simply as a result of his 37-day stay in Ad-Seg. *See Sandin*, 515 U.S. at 486 (holding that 30-day stay in administrative segregation did not impose an atypical, significant hardship sufficient to implicate a protected liberty interest); *Serrano*, 345 F.3d at 1078-79 ("Typically, administrative segregation in and of itself does not implicate a protected liberty interest" but one may arise where the conditions of confinement work an atypical and significant hardship). District courts have found that administrative segregation stays of nine months and of nearly two years failed to allege atypical and significant hardships within the meaning of *Sandin*. *See*, *e.g.*, *Hernandez v. Constable*, 2020 WL 2145387, at *3 (E.D. Cal. Feb. 21, 2020) (collecting cases).

A protected liberty interest may arise where an atypical, significant hardship arose from a stay in segregation if the conditions there were a dramatic departure from the standard conditions of confinement. *See Keenan v. Hall*, 83 F.3d 1983, 1088-89 (9th Cir. 1996) ("The *Sandin* Court seems to suggest that a major difference between the conditions for the general population and the segregated population triggers a right to a hearing.") (citing *Sandin*, 515 U.S. at 485); *see also Serrano*, 345 F.3d at 1078 (identifying three "guideposts" for that inquiry, including how the conditions differed from ordinary conditions of confinement, their duration and the degree of restraint). Plaintiff alleges Ad-Seg was infested with pigeons and the floors were covered in pigeon feces which caused him to become ill. However, even assuming those conditions gave rise to a protected liberty interest, Plaintiff admits he received all the process he was due because he was

1  found not guilty at his second hearing where the charge was dismissed. *See, e.g., Shotwell
2  v. Brandt*, No. C10-5253-CW (PR), 2012 WL 6569402, at *3 (N.D. Cal. Dec. 17, 2012)
3  ("Here, due process was satisfied when the results of the first disciplinary hearing were
4  vacated, the RVR was ordered reissued and reheard, Plaintiff was found not guilty at the
5  second hearing, and he was released from administrative segregation and not subjected to
6  credit loss or any other form of punishment.") (citing *Raditch v. United States*, 929 F.2d
7  478, 481 (9th Cir. 1991) (holding that the remedy for an unfair hearing is another hearing)).
8  Because Plaintiff has failed to allege he suffered any adverse consequences arising from
9  his disciplinary proceedings, he has failed to plausibly allege a due process violation.

10  Plaintiff also claims he was subjected to cruel and unusual punishment as a result of
11  his stay in Ad-Seg because it was infested with pigeons and the floors were covered in
12  pigeon feces which caused him to become ill. "The circumstances, nature, and duration"
13  of the conditions in Ad-Seg must rise to the level of "extreme deprivations" as opposed to
14  "routine discomfort inherent in the prison setting" in order to violate the Eighth
15  Amendment's prohibition on cruel and unusual punishment as applicable to the states
16  through the Fourteenth Amendment. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000);
17  *see also Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) ("[W]hile conditions
18  of confinement may be, and often are, restrictive and harsh," only conditions which are
19  "devoid of legitimate penological purpose . . . or contrary to evolving standards of decency
20  that mark the progress of a maturing society violate the Eighth Amendment.") (citing
21  *Hudson v. Palmer*, 468 U.S. 517, 548 (1984)); *see also Farmer v. Brennan*, 511 U.S. 825,
22  834 (1994) (Eighth Amendment violation occurs where a prisoner is denied "the minimal
23  civilized measure of life's necessities"); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (an
24  Eighth Amendment violation requires an objectively grave deprivation of humane
25  conditions of confinement); *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("After
26  incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and
27  unusual punishment forbidden by the Eighth Amendment.").

28  There are no factual allegations in the Complaint regarding the nature of Plaintiff's

illness acquired while in Ad-Seg, or any factual allegations of a grave deprivation of humane conditions of confinement which created a serious risk to his health or safety so as to plausibly allege cruel and unusual punishment. Although "subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment," the temporary imposition of such conditions does not state a claim absent allegations of a risk of harm. *Anderson v. County of Kern*, 45 F.3d 1310, 1314-15 (9th Cir. 1995); *Johnson*, 217 F.3d at 731 ("The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred."). Plaintiff's lack of detailed factual allegations in this respect, in particular the nature and severity of his illness, fails to plausibly allege he was subjected to an objectively serious risk to his health or safety.

In addition to the requirement that Plaintiff satisfy that objective component of an Eighth Amendment violation, Plaintiff must also allege facts showing that a Defendant knew the conditions of confinement in Ad-Seg presented a substantial risk to his health and safety and deliberately disregarded that risk. *See Farmer*, 511 U.S. at 837 ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). There are no allegations in the Complaint that any Defendant was aware the conditions in Ad-Seg presented a serious danger to Plaintiff's health or safety, nor that any Defendant deliberately disregarded that risk.

Accordingly, Plaintiff's Complaint is dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Wilhelm*, 680 F.3d at 1121; *Watison*, 668 F.3d at 1112.

### D. Leave to Amend

In light of his pro se status, the Court grants Plaintiff leave to amend his Complaint in order to attempt to address the pleading deficiencies identified in this Order. *See Rosati*

*v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

## IV. CONCLUSION

Good cause appearing, the Court:

1. **GRANTS** Plaintiff's IFP Motion (Doc. 2) pursuant to 28 U.S.C. Section 1915(a) (ECF No. 5).

2. **ORDERS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's prison trust account the $350 filing fee owed by collecting monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. Section 1915(b)(2).

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California 94283-0001.

4. **DISMISSES** Plaintiff's Complaint for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1) and **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* Civ. Local R. 15.1; *Hal Roach Studios, Inc.*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

**If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's**

1 **failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1), and his failure to prosecute in compliance with a court order requiring amendment.** *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated:  June 7, 2022

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE